UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ANGELA DAVIS, | Civil Action No.: 3:14-cv-3822-TLW-TER |
| Plaintiff, | |
| -vs- | |
| | **REPORT AND RECOMMENDATION** |
| STATE OF SOUTH CAROLINA DEPARTMENT OF INSURANCE, | |
| Defendant. | |

**I.     INTRODUCTION**

This is an employment case. Plaintiff originally brought this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. and the Equal Pay Act (EPA), 29 U.S.C. § 206(d), alleging discrimination based on sex. She also alleged a state law claim of discrimination in violation of the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1-13-10 et seq. However, Defendant's Motion to Dismiss (Document # 9) Plaintiff's Title VII and SCHAL claims was granted, and its Motion to Dismiss her EPA claim was denied. See Order (Document # 29). Thus, the only cause of action remaining before the court is Plaintiff's EPA cause of action. Presently before the court is Defendant's Motion for Summary Judgment (Document # 31) as to that claim. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

**II.    FACTS**

In early 2012, Plaintiff applied for and was hired to fill a temporary Auditor II position in

the South Carolina Department of Insurance's (SCDOI) Taxation section. In January of 2013, Plaintiff applied for and was selected to fill a permanent Auditor II position in Taxation. Her transition from temporary to permanent status resulted in an approximately $6,000 increase in her salary – from about $25,000 annually to $31,000 annually – while her duties remained essentially unchanged. Pl. Dep. 17-35 and Def. Exs. 1-5[1] (Ex. to Def. Motion).

In August 2013, SCDOI advertised a permanent financial analyst Auditor II position with a salary hiring range of $25,627 to $42,000. Pl. Dep. Def. Ex. 6. This position was in the Financial Regulation and Solvency Division and reported to SCDOI's Chief Financial Analyst and Deputy Director Lee Hill. Pl. Dep. 17-36; 58-67 and Def. Exs. 2, 3, 4 and 6. Plaintiff applied for the financial analyst position but withdrew as a candidate before a selection was made. Pl. Dep. 37-40. Ryan Basnett, a temporary employee who had been performing the duties of the position for the previous ten months, was selected for the permanent position in August 2013. Thus, just as Plaintiff transitioned from temporary to permanent status in 2012 while performing essentially the same duties, Basnett did so in 2013. Pl. Dep. 42-43; Basnett Dep. 11-13; 27 (Ex. to Def. Motion).

Although Plaintiff voluntarily withdrew from consideration for the permanent position for which Basnett was selected, after his selection she questioned her second-level supervisor, SCDOI Finance Director Tommy Watson, about the minimum requirements and salary range advertised for that position. Specifically, Plaintiff noted that the job posting for the Auditor II position she held required a minimum of an associate's degree and specified a maximum hiring salary of $31,000 annually, whereas the job posting for the Auditor II position for which Basnett was selected listed a high school degree and experience as the minimum educational requirement and set $42,500 as the

---

[1]This refers to Defendant's exhibits to Plaintiff's deposition.

maximum hiring salary. Watson discussed the two positions with Plaintiff and noted that the job posting for the position for which Mr. Basnett was selected made set forth that that the successful applicant would have to have a bachelor's degree; that the position appeared to require more skill and experience than Plaintiff's position; and that Plaintiff should not have withdrawn as an applicant for that position if she believed it would advance her career. Pl. Dep. 43-57 and Def. Exs. 8, 9 and 10.

A comparison of the January 2013 job description for the position filled by Plaintiff and the August 2013 job description for the position filled by Basnett is helpful.

The January 2013 job description for the Auditor II (Taxation) position filled by Plaintiff includes the following pertinent information:

| | |
|---|---|
| Job Title: | Auditor II (Taxation) |
| Class Code: | AD08 |
| Agency Hiring Range: | $25,627-$31,000 |
| Job Responsibilities: | Applies statutory accounting procedures to audit, analyze, and interpret data contained in tax returns to determine compliance with Code of Laws and to determine tax liabilities and/or credits. Researches and analyzes tax refund requests. Reviews and inspects documentation provided to ensure accuracy. Performs peer reviews of tax returns. |
| | Verifies the quarterly tax returns and receipts (payments) to determine that the correct taxes are being collected from insurers and surplus line brokers. |
| | Performs various clerical accounting and bookkeeping duties which may include posting, updating, reconciling, scanning and filing. Assists in processing Accounts Payable and Accounts Receivables. |
| | Responds to inquires from consumers, insurers via brokers; |

|  |  |
|---|---|
|  | answers the telephone; replies to other correspondence received (letters, faxes, and email). |
|  | Assists with the completion of the Late Filers' Report for the Legal Unit and the annual Market Share Report. |
|  | Assists in other tax related duties, including, but not limited to, annual revision and update to the NAIC Retaliatory Guide state pages by reviewing other states' requirements and changes. Assists with the coordination with IRM on revising and updating tax return information online (and manually, if necessary). |
| Minimum and Additional Requirements: | Associate's degree in Business or Accounting and 2 years experience on accounting, auditing, and/or insurance. |
| Preferred Qualifications: | Ability to interpret and explain laws, procedures and policies. Knowledge of the principles, practices, methods, and theories of accounting, auditing, and/or insurance is required. Ability to analyze and verify accounting, statistical and financial data. Ability and knowledge of EDP systems and adaptations. Ability to use a 10-key calculator. Ability to utilize electronic/online tax applications. Ability to maintain harmonious working relationships. Ability to communicate effectively. |
| Additional Comments: | This position is under moderate day-to-day supervision of the Premium Tax Manager. |
|  | At least six months' experience in the industry is preferred. Must be able to adhere to deadlines and work in a fast-paced team environment. |

Pl. Dep. Def. Ex. 2.

The August 2013 job description for the Auditor II position filled by Basnett includes the following pertinent information:

| Job Title: | Auditor II |
|---|---|
| Class Code: | AD08 |

| | |
|---|---|
| Agency Hiring Range: | $25,627-$42,500 |
| Job Responsibilities: | Assists in the protection of the public and policy holders against insolvencies by detecting as early as possible, through an analysis of financial and other available information, those potentially troubled insurance companies which may require immediate examination of regulatory action.<br><br>Ensures that applications for admission of insurance companies seeking licensure to conduct business in South Carolina are in compliance with South Carolina insurance statutes and are processed efficiently.<br><br>Accumulates all data not readily available to the Department and thereby must have extensive experience in the use of Microsoft Access. This is to include meeting with managers to determine the information needed, writing the Access programs to extract the information from an outside data site and developing a report that can be easily read.<br><br>Maintains the Financial Regulation and Solvency Division's portion of the Department's website, as well as, assists other divisions with maintaining their respective website pages. |
| Minimum and Additional Requirements: | A high school diploma and experience in accounting, auditing, bookkeeping, insurance, procurement or unemployment insurance. |
| Preferred Qualifications: | A Bachelor's degree, as required by the National Association of Insurance Commissioners (NAIC), with a major in business, accounting, finance or equivalent with experience in insurance accounting , financial analysis and/or auditing utilizing statutory accounting principles.<br><br>To fulfill the position's responsibilities, knowledge of principles, practices, methods and theories of statutory accounting, auditing and insurance. The candidate must be familiar with the insurance laws of South Carolina and the Accounting Practices and Procedures as developed by the National Association of Insurance Commissioners (NAIC). The applicant should have experience in the detailed analysis of the statutory financial statements of Property & Casualty, |

|  |  |
|---|---|
|  | Life, Title and Accident & Health Insurance companies and must be able to make recommendations to the Chief Financial Analyst regarding the financial position of these companies. |
|  | Knowledge of Microsoft Word, Access, and Excel programs. Skilled in the use of a calculator. Ability to communicate effectively both orally and in writing. Ability to establish and maintain effective working relationships with others. Ability to interpret and explain laws, procedures and policies to other individuals. |
| Additional Comments: | This position must be able to assume responsibility to all Microsoft applications within the Department. |
|  | The employee will receive day-to-day supervision from the Chief Financial Analyst; however, it is the applicant's responsibility to exercise substantial independence and discretion in determining if communication with insurers is necessary. More significant problems which may impair the financial integrity of an insurer are reviewed with the Chief Financial Analyst and the Deputy Director of Insurance. |

Pl. Dep. Def. Ex. 6.

Plaintiff testified that the Taxation section to which she is assigned functions essentially as the Internal Revenue Service/Department of Revenue for insurance companies doing business in South Carolina. She explained that she examines information provided by insurance companies and brokers licensed to do business in South Carolina to assure that they are paying required taxes to South Carolina. She also answers questions from insurance company representatives about tax issues, cross-checks the work of other auditors in the Taxation section, generates requests for tax refunds where a company or broker is due one, and verifies that the tax information companies are reporting to SCDOI is consistent with the information they are reporting to the NAIC. Pl. Dep. 58-67. Plaintiff admitted that she really does not know what Basnett does on a day-to-day basis. Pl. Dep. 56-58; 70-71. Her information about Basnett's job duties, she testified, is based solely on the

job posting for that position.  Pl. Dep. 41-43; 70-71.[2]

Basnett testified that his "main job duty" "is to make sure that . . . insurers [authorized to do business in South Carolina] remain solvent." Basnett Dep. 8. Lee Hill, Basnett's second-level supervisor who once held Mr. Basnett's position, Hill Dep. 7; 16, echoed that testimony, noting that Basnett is "the first line of defense as far as the policyholders of the state are concerned." [Hill dep. 7]. Basnett also works with SCDOI upper management and its Committee on Applications in reviewing applications by insurance companies seeking licensure in South Carolina and comprehensively briefing the Committee regarding those applications. Hill Dep. 10- 12.  Plaintiff's job duties do not involve solvency issues and, unlike Basnett's job, her job does not require that she work regularly with insurance company CEOs and CFOs. Hill Dep. 6-14, 16-18; Pl. Dep. 17-35, 58-67 and Def. Exs. 2, 3, 4 and 5.

## III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears

---

[2]Basnett is classified as an Auditor II in the state personnel classification system but works as a financial analyst, Basnett Dep. 7-8, just as Plaintiff is classified as an Auditor II in the state classification system but works as a tax examiner. Pl. Dep. 42-43. They also work in different sections of SCDOI. Pl. Dep. 35-36.

the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); <u>see also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

Plaintiff alleges that Defendant violated the EPA by paying her less than a male coworker in the same position.  The EPA prohibits employers from discriminating "between employees on the

basis of sex by paying wages to employees ... at a rate less than the rate at which [they] pay[ ] wages to employees of the opposite sex" for work requiring "equal skill, effort, and responsibility, ... performed under similar working conditions." 29 U.S.C. § 206(d)(1)(2000). To establish a <u>prima facie</u> case under the EPA, a plaintiff must prove: (1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions. <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 189, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); <u>Fowler v. Land Mgmt. Groupe, Inc.</u>, 978 F.2d 158, 161 (4th Cir.1992). Once a plaintiff establishes a <u>prima facie</u> case, the employer bears the burden to prove, by a preponderance of the evidence, that the pay differential was motivated by one of four statutory exceptions. <u>Strag v. Bd. of Trustees</u>, 55 F.3d 943, 948 (4th Cir.1995); <u>EEOC v. Whitin</u>, 635 F.2d 1095, 1097–98 (4th Cir.1980). Differential pay is only legal where the difference is made pursuant to a(1) seniority system, (2) merit system, (3) "quality of work" system, or (4) other gender neutral standard. 29 U.S.C. § 206(d)(1).

It is undisputed that Basnett, a male, was paid more than Plaintiff, a female. However, Defendant argues that Plaintiff fails to show that her job required equal skill, effort and responsibility as Basnett's position. The fact that a female and a male employee have the same job title and/or classification and are paid different salaries is insufficient to create a genuine issue of material fact as to whether the employer has violated the EPA. See <u>Wheatley v. Wicomico County, Md.</u>, 390 F.3d 328, 332 (4th Cir. 2004) ("We decline to accept the argument . . . that employees with the same titles and only the most general similar responsibilities must be considered equal under the EPA."). The touchstone of the equal work analysis is whether the work is "substantially equal." <u>Brewster v. Barnes</u>, 788 F.2d 985, 991 (4th Cir.1986). Jobs must be "virtually identical" to satisfy the

"substantially equal" requirement, Wheatley, 390 F.3d at 333 (internal quotations omitted), because "[i]n enacting the EPA, Congress chose the word 'equal' over the word 'comparable' in order 'to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other.' Id. at 333-34. Whether the jobs are virtually identical is determined through a "factor by factor" comparison. Houck v. Virginia Polytechnic Inst. & State Univ., 10 F.3d 204, 206 (4th Cir. 1993).

Skill is a function of experience, training, education, and ability, and is measured in terms of the "performance requirements" of the job. 29 C.F.R. § 1620.15(a); see also Lovell v. BBNT Sols., LLC, 295 F. Supp. 2d 611, 622 (E.D. Va. 2003); Hassman v. Valley Motors, Inc., 790 F. Supp. 564, 568 (D. Md. 1992); Davis v. S. Carolina Dep't of Health & Envtl. Control, No. 3:13-CV-02612-JMC, 2015 WL 5616237, at *6 (D.S.C. Sept. 24, 2015). Plaintiff focuses on the fact that she is working towards her Master's degree in Human Resource Management and has been in the insurance industry for 29 years, Pl. Dep. 36, while Basnett holds a Bachelor's Degree in Sports and Entertainment Management and an Associate's Degree in Accounting and has been in the insurance industry for about two and a half years. Basnet Dep. 6-7. However, unlike a failure to promote claim under Title VII, the relevant comparison for an EPA claim is not the education and experience of the individuals holding the positions, but the education and experience levels required for the positions themselves. "Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill." 29 C.F.R. § 1620.15(a); see also Lovell, 295 F. Supp. 2d at 622; Hassman, 790 F. Supp. at 568; Davis, 2015 WL 5616237, at *6.

Plaintiff's position required, at minimum, an Associate's degree in Business or Accounting

and two years of experience in accounting, auditing, and/or insurance. At least six months of experience in the insurance industry was preferred. Pl. Dep. Def. Ex. 2. On the other hand, Basnett's position required, at a minimum, a high school diploma and experience in accounting, auditing, bookkeeping, insurance, procurement, or unemployment insurance, with a preference for a Bachelor's degree with a major in business, accounting, finance, or equivalent and experience in insurance accounting, financial analysis, and/or auditing utilizing statutory accounting principles. Pl. Dep. Def. Ex. 6. The job description for Basnett's job also stated that the applicant "must have extensive experience in the use of Microsoft Access" and experience "in the detailed analysis of the statutory financial statements of Property & Casualty, Life, Title, and Accident & Health insurance companies." Pl. Dep. Def. Ex. 6. Thus, although Basnett's job had a lower minimum education requirement, it included a preference for a Bachelor's degree as well and "extensive experience" with certain software and detailed analysis skills. Plaintiff's job did not include a preference for any higher degree or specific experience with any particular skills.

> With respect to effort and responsibility, the Fourth Circuit has explained that
>
> [J]obs do not automatically involve equal effort or responsibility even if they entail most of the same routine duties. Jobs are considered unequal— despite having the same general core responsibilities—if the more highly paid job involves additional tasks which (1) require extra effort . . . (2) consume a significant amount of the time . . . and (3) are of an economic value commensurate with the pay differential.

Wheatley, 390 F.3d at 332 (internal quotations and citations omitted). Further, responsibility measures the degree of "accountability" to higher-ups. 29 C.F.R. 1620.17(a). As set forth above, the job descriptions for the position held by Plaintiff and the position held by Basnett show numerous differences. Although job descriptions are not necessarily dispositive, see e.g., Blackman v. Florida Dep't of Bus. and Prof'l Reg., 599 Fed. Appx. 907, 911 (11th Cir. 2015), both Plaintiff

and Basnett vouched for the accuracy of their respective job descriptions. Pl. Dep. 27-37; Basnett Dep. 13-26, 31. In addition, SCDOI Deputy Director Hill, who once held the position that Basnett currently holds and who now supervises both Plaintiff and Basnett, testified that Plaintiff's job duties as an Auditor II are "extremely different" from Basnett's duties as an Auditor II, Hill Dep. 5-16, 19-20, and elaborated:

> A. I think [Plaintiff] mentioned she looks at -- they look at the financial statements, but there are only a couple pages I think, maybe the state, she mentioned the state page, they do some comparisons and Ryan's job he's responsible for every page in the financial statements. He's responsible for actually calling the companies in if there's -- if he sees an issue, he may have to call the companies in to get them to explain which he does quite often. I know Ms. Davis talked to the companies, but Ryan's goes beyond that. He has to deal personally with the CFOs and in some cases the CEOs of those companies. It is an accreditation issue, his job is. Not just his, but all the financial analysts within the division are required. Their degrees are required for them to be -- out of the roughly 30 people within the division, I think I only have one that is not -- does not have a degree, but that person does not do any kind of financial analysis.
>
> Q. The job duties that Ms. Davis and Mr. Basnett perform, are they interchangeable?
>
> A. No, sir.
>
> Q. Could she go do his job tomorrow?
>
> A. No, sir.
>
> Q. Could he go do her job tomorrow?
>
> A. No, sir.
>
> Q. If you had to value these jobs, is one of the jobs, the auditor II position held by Ms. Davis and the auditor II position held by Mr. Basnett, is one of those positions relatively more important to the Department than any other?
>
> A. Yes.
>
> Q. Which one?

>A. Ryan's is.
>
>Q. Why?
>
>A. Because of accreditation. I mean we live for this accreditation. We have to be accredited. That's not a -- it's not an option for us.
>
>Q. Do you know whether Ms. Davis could do the accreditation work if she were in that position?
>
>A. I do not know whether she could.
>
>Q. Does she have to do accreditation work like Ryan does in her position in taxation?
>
>A. You say does she?
>
>Q. Does she, yes.
>
>A. No, sir.

Hill Dep. 19-20. Given this testimony from the supervisor of both Plaintiff and Basnett that their jobs are not substantially equal, their written job descriptions and their own descriptions of their jobs, as well as Plaintiff's testimony that she does not really know what duties Basnett performs on a daily basis, Plaintiff has failed to carry her burden of showing that she and Basnett hold jobs that require equal skill, effort, and responsibility. As noted above, "Congress chose the word 'equal' over the word 'comparable' in order 'to show that the jobs involved should be virtually identical.'" Wheatley, 390 F.3d at 333. Absent a showing of jobs that are virtually identical, Plaintiff cannot establish a prima facie case of a violation of the EPA, and summary judgment is appropriate. See Id. at 332; 334 (affirming summary judgment for employer and rejecting the argument "that employees with the same titles and only the most general similar job responsibilities" are " 'equal' " because acceptance of that argument would "convert the EPA equality standard into a similarity test.").

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 31) be granted and this case dismissed in its entirety.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

March 14, 2016  
Florence, South Carolina